IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY HARPER

**FILED**

CIVIL ACTION

v.

NOV 2 8 2007

JEFFREY A. BEARD, ET AL.

MICHAEL E. KUNZ, Clerk NO. 2:05-CV-01803-LDD
By_____Dep. Clerk

MEMORANDUM AND ORDER

Presently before the Court are the Motion to Dismiss[1] filed by the Office of the Clerk of

Court for the United States District Court for the Eastern District of Pennsylvania ("Office of the

Clerk") (Doc. No. 53), Plaintiff's Response (Doc. No. 58), Plaintiff's "Counter Claim for

Summary Judgment"[2] (Doc. No. 60), the Office of the Clerk's Response (Doc. No. 61), and

Plaintiff's "Objection to Motion" (Doc. No. 62).  After careful review, and for the reasons set

forth below, Defendant's Motion (Doc. No. 53) is granted and Plaintiff's Cross-Motion (Doc.

No. 60) is denied.  This case is dismissed with prejudice.

I. Factual and Procedural History

Anthony Harper ("Harper" or "plaintiff"), an inmate at Graterford State Correctional

---

[1] As a result of the full factual record, this Court converted the Office of the Clerk's
Motion to Dismiss into a Motion for Summary Judgment, and reviewed the motion in accordance
with the standards of Federal Rule of Civil Procedure 56.  See Fed. R. Civ. P. 12(b); In re
Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999). As required by
Rule 12(b), the parties were notified of the Court's intention to convert the dismissal motion by
Order dated June 26, 2007 (Doc. No. 59.)  Neither party opted to supplement the factual record.
Plaintiff filed a "Counter Claim for Summary Judgment" (Doc. No. 60) which reiterated, at times
verbatim, arguments made in previous submissions.  This document is treated as a cross-motion
for summary judgment and is denied without further discussion because Plaintiff 's claim is
legally deficient.

[2] The Court will view this submission as a Cross-Motion for Summary Judgment.

Institution, located in Graterford, Pennsylvania, is serving a life sentence as a result of his 1975 conviction for first degree murder, robbery, possession of instruments of crime, and possession of a prohibited offensive weapon.[3]  The events giving rise to this action began in 1998 with the filing of plaintiff's initial petition for writ of habeas corpus which resulted in an adjudication on the merits.[4]  Following the issuance of a Report and Recommendation by United States Magistrate Judge Faith Angell, United States District Court Judge Jan DuBois issued a Memorandum and Order denying the petition and declining to issue a certificate of appealability. Harper v. Vaughn, Civ. No. 98-728, 2002 WL 257850 (E.D. Pa. Feb. 21, 2002).  Although plaintiff filed the habeas petition *pro se*, counsel appeared and submitted briefs on his behalf.  Id. at *1.  Plaintiff, through counsel, then moved for a certificate of appealability, which was denied by the Third Circuit Court of Appeals on December 26, 2002.  (See Ct. of App. Docket, No.02-1826, App. II, Tab 9.)

On February 11, 2003, Harper filed a petition for writ of certiorari to the United States Supreme Court, presumably[5] requesting review of the Third Circuit's refusal to issue a certificate of appealability.  (See Def.'s Letter to the S. Ct. (March 21, 2003), App. I, Exh. B.)  The

_____

[3]Plaintiff appealed his conviction and sentence to the Pennsylvania Supreme Court which, in July 1979, vacated the conviction for possession of a prohibited offensive weapon but affirmed the remaining convictions and judgments of sentence.  Com. v. Harper, 485 Pa. 572, 403 A.2d 536 (1979).

[4]According to the Plaintiff, he previously filed "about ten" habeas petitions.  However, they were summarily dismissed because the Plaintiff's state court petition for collateral review, filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9551, amended Apr. 13, 1988, P.L. 336, No. 47 § 3, was unresolved.  (See Pl.'s Dep. at 18.)

[5]As discussed below, Harper did not include his certiorari petition with his complaint or make any allegations with respect to its contents.

2

Supreme Court subsequently returned the petition as the record was incomplete since two pages were missing from the attached copy of Judge DuBois' opinion. (Id.; Pl.'s Dep. at 94-95.)

On March 12, 2003, plaintiff wrote to the Clerk of Court for the United States District Court for the Eastern District of Pennsylvania requesting the missing pages of Judge DuBois' Memorandum and Order. (Letter to Clerk (March 12, 2003), App. I, Exh. L; Pl.'s Dep. at 85-87.) Harper acknowledges that the Office of the Clerk responded, but avers that the Office provided a "read out of the case before the court"[6] rather than the memorandum. (See Letter to Records Room Clerk (March 21, 2003), App. I, Exh. C.) On the same date, plaintiff also re-sent his February 11, 2003, certiorari petition to the Supreme Court. (Letter to S. Ct. (March 21, 2003), App. I, Exh. B; Pl.'s Dep. at 36-41, 96.) The Supreme Court again returned the petition due to the missing pages. (See Letter to S. Ct. (April 7, 2003), App. I, Exh. D; Pl's Dep. at 98-100.)

Having still not received a complete copy of the memorandum, on May 16, 2003, Harper filed an "Appeal to Set Aside Verdict of District Court for Not Turning Over a True Copy of Memorandum" in the Third Circuit. (Ct. of App. Docket 02-1826, App. II, Tab 9.) By order, the Court of Appeals stated it would take no action because the proceedings in that court had concluded. (Id.)

Plaintiff then filed another motion for "relief from judgment or order" in the District Court, which was denied by Judge DuBois on July 23, 2003. Harper v. Vaughn, 272 F. Supp. 2d 527 (E.D. Pa. 2003)(construing plaintiff's submission as a motion pursuant to Fed. R. Civ. P. 60(b)). Harper sought review of this denial by filing a document entitled "Relief From Judgment

---

[6]It is unclear from the parties' submissions what document plaintiff refers to in his use of the phrase "the read out of the case." The document was not included in the record.

or Order" with the Third Circuit on August 5, 2003. The court of appeals construed this submission as a request for the issuance of a certificate of appealability, and subsequently denied the request on February 27, 2004. (Ct. of App. Docket 03-3331, App. II, Tab 10.) Harper filed a motion for a rehearing *en banc*, which was denied by order on May 21, 2004. (Id.)

Harper then filed (or re-filed) two more certiorari petitions with the United States Supreme Court. (Pl.'s Dep. at 104-05.) One was filed on June 14, 2004, and the other on July 26, 2004. (Id.) Neither of the certiorari petitions are before this court, and thus it is difficult to decipher if these petitions were simply resubmissions of the initial February 11, 2003 petition, or if the petitions raised new issues with respect to later court proceedings.[7] The Supreme Court returned both petitions becuase the copy of Judge DuBois' memorandum was still incomplete. (Letter from S. Ct. (July 27, 2004), App. I, Exh. W7.) The Clerk of the Supreme Court advised plaintiff that "unless the petition is received by this office in corrected form within 60 days of the date of this letter, the petition will not be filed." (Id.; Pl.'s Dep. at 110.)

Harper then wrote to the Clerk of the District Court requesting a complete copy of the Dubois memorandum. (Letter to Dist. Ct. Clerk (Aug. 3, 2004), App. I, Exh. H; Pl.'s Dep. at 112.) He received a response from the Deputy Clerk which explained that he must pay a fee to retrieve the missing pages from the National Archives. (Id. at 2.) Harper wrote to his father asking him to pay the district court fee and retrieve the pages. (Letter to Father (Aug. 10, 2004),

---

[7]Harper's deposition at first indicates that the June 14 and July 26, 2004 certiorari petitions dealt with the Third Circuit's affirmance of Judge DuBois' decision denying federal habeas corpus relief and declining to issue a certificate of appealability. (Pl.'s Dep. at 107:20-108:10.) This would indicate that the June 14 and July 26, 2004 petitions were resubmissions of the February 11, 2003 certiorari petition. However, Harper's deposition testimony then suggests that his June 14 and July 26, 2004 petitions sought review of the Third Circuit's affirmance of Judge DuBois' denial of the Rule 60(b) motion. (Pl.'s Dep. at 108:11-109:23.)

App. I, Exh. W1.)  Plaintiff's father paid the fee at the Office of the Clerk of Court, but received Magistrate Judge Angell's Report and Recommendation rather than Judge DuBois' Memorandum and Order.  (Id.; Pl.'s Dep. at 116.)   Plaintiff wrote to Judge DuBois requesting the missing pages–though he incorrectly addressed this letter to the Third Circuit.  (Letter to J. DuBois (Aug. 16, 2004), App. I, Exh. G.)  He wrote again to the Deputy Clerk on August 27, 2004, and the Court Clerk on September 6, 2004.  (Letter to Dist. Ct. Clerk (Sept. 6, 2004), App. I, Exh. W2.)  On September 17, 2004, the Deputy Clerk advised plaintiff that Judge DuBois' memorandum was not contained within the case file.  (Letter From Dist. Ct. Clerk (Sept. 17, 2004), App. I, Exh. J; Pl.'s Dep. at 118.)  She also informed plaintiff that her supervisor was notified of this fact and a search of the Office of the Clerk was underway in an effort to locate the document.  (Id.)

On September 20, 2004, Harper again mailed his certiorari petition to the Supreme Court. (Letter to S. Ct. (Sept. 20, 2004), App. I, Exh. W5; Pl.'s Dep. at 134.)  The petition, which was still missing the final two pages of the February 21, 2002 memorandum, was again returned to plaintiff.  (Pl's Dep. at 136, 141, 145.)

Thereafter, on September 28, 2004, Harper submitted a request for a 20 day extension to the Clerk of Court for the United States Supreme Court.  (Letter to S. Ct. (Sept. 28, 2004), App. I, Exh. O.)  Plaintiff concedes that the 60 day deadline set by the Supreme Court in its July 27, 2004 letter already expired when he transmitted this request.  (Pl.'s Dep. at 147.)

Harper then mailed various letters in an effort to retrieve the missing pages.  He wrote to the Clerk for the District Court on September 28 and October 4, 2004, using an incorrect zip

code.[8] (Letters to Dist. Ct. Clerk (Sept. 28, 2004; Oct. 4, 2004), App. I, Exh. F, C1.) On October 18, 2004, Plaintiff also sent a certified letter to Judge James Giles, Chief Judge of the District Court for the Eastern District of Pennsylvania, explaining his dilemma and requesting intervention. (Letter to C.J. Giles (Oct. 4, 2004), App. I, Exh. E.[9]) Thereafter, Plaintiff received a letter from Judge DuBois responding to his "letter of October 18, 2004, addressed to Chief Judge Giles." (Letter from J. DuBois (Oct. 25, 2004), App. I, Exh P.) This letter included a complete copy of the February 21, 2002 Memorandum and Order. (Id.)

Plaintiff attempted to submit his certiorari petition, still missing the pages, on October 20, 2004. (Pl.'s Dep. at 164.) The Supreme Court received the incomplete petition on October 26, 2004, but returned it again explaining: "As a corrected petition was not received within 60 days of the July 27, 2004 letter from this Office, the petition is out-of-time. Rule 14.5." (Letter from S. Ct. (Oct. 27, 2004), App. I, Exh. T.)

Harper filed the present complaint on May 23, 2005,[10] asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986, against various staff members at Graterford Prison[11] and against the

---

[8]Plaintiff wrote the zip code 19107 whereas the correct zip code is 19106.

[9]Although this letter is dated October 4, the receipts indicate that it was not actually mailed until October 18. (Receipts Following Letter to Chief Judge Giles, App. I, Exh. D-6.)

[10]Also, after the instant action was filed, plaintiff filed a new habeas corpus petition on July 5, 2005. (App. II, Tab 11.) Portions of this petition were dismissed by Judge DuBois on May 11, 2006. Harper v. Digugliemo, 2006 WL 1308248 (E.D. Pa. 2006). Other claims in the petition were dismissed by the Third Circuit on July 17, 2006, and October 26, 2006. See Dist. Ct. Docket 05-cv-3444.

[11]Summary judgment was granted in favor of the Corrections Defendants on all claims. (Mem. and Order, Apr. 23, 2007, Doc. No. 48.) That decision is on appeal to the Court of Appeals for the Third Circuit. (Doc. No. 49.)

"District Court Clerk's Office of Easter[n] District Court". Plaintiff asserts that the Office of the Clerk misplaced and delayed the delivery of Judge DuBois' February 21, 2002 Memorandum and Order. These actions, Plaintiff contends, constituted a denial of his constitutional right of access to the courts.

II. Legal Standard

In considering a motion for summary judgment, the Court must examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to determine whether there is any "genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on the motion, the Court must draw all reasonable inferences in the light most favorable to the nonmoving party, and "may not weigh the evidence or make credibility determinations." Boyle v. City of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998); Anderson, 477 U.S. at 255. Therefore, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

III. Discussion

The Office of the Clerk of Court for the United States District Court for the Eastern District of Pennsylvania is a federal entity. Sections 1983, 1985 and 1986 of Title 42 of the United States Code only apply to state actors. As such, plaintiff cannot bring claims against the Office of the Clerk under these statutes. However, because the plaintiff is proceeding *pro se*, this Court will construe his constitutional claims under 42 U.S.C. §§ 1983, 1985, and 1986 as

brought pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).   <u>See</u> <u>Abuhouran v. Acker</u>, 2005 WL 1532496 at *1 n.1 (E.D. Pa. 2005)(citing <u>Solan v. Reno</u>, 1999 U.S. Dist. LEXIS 12237 at *1 n.1 (E.D. Pa.); <u>Lattany v. Four Unknown U.S. Marshals</u>, 845 F.Supp. 262, 265 (E.D. Pa. 1994)).

Summary judgment must be granted in favor of the government for several reasons. First, there is no genuine issue of material fact with respect to any "actual injury" suffered by Harper. Harper made no attempt to establish the basis of his certiorari petition, which is the predicate of his denial of judicial access claim. Additionally, Harper suffered no actual injury because his certiorari petition cannot pass the "non-frivolous" test. Lastly, summary judgment must be granted in favor of the government because a <u>Bivens</u> action cannot be maintained against the Office of the Clerk, which is a federal entity.

A.  Actual Injury

The United States Supreme Court has instructed in the context of a violation of the constitutional right to access the courts, an inmate must allege "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." <u>Lewis v. Casey</u>, 518 U.S. 343, 348 (1996). Additionally, the <u>Lewis</u> court made clear that, in order for there to be an actual injury, the inmate must establish "that a *nonfrivolous* legal claim had been frustrated or was being impeded." <u>Id.</u> at 352, 356 (emphasis added). <u>See</u> <u>also</u> <u>Gordon v. Morton</u>, 131 Fed. Appx. 797 (3d Cir. 2005). In other words, the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered an injury by being shut out of court." <u>Christopher v. Harbury</u>, 536 U.S. 406, 415 (2002).

The underlying claim must be "nonfrivolous" and "arguable". <u>Id.</u> Moreover, the plaintiff

must describe the predicate claim in the complaint "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is *more than hope*." Id. at 416 (emphasis added).

In the instant case, Harper's claim for denial of judicial access is predicated on his petition for certiorari to the United States Supreme Court. It is clear from the record that Harper missed a filing date for certiorari because he could not obtain the final two pages of the District Court opinion. (Letter from S. Ct. (Oct. 27, 2004), App. I, Exh. T.) However, this showing is insufficient to support an access to the courts claim under Lewis v. Casey. In the context of a judicial access claim, an inmate must show not only that he could not present his claim, but also that the predicate claim was a non-frivolous, arguable legal claim. Christopher v. Harbury, 536 U.S. at 415 (2002); Lewis v. Casey, 518 U.S. at 349, 356 (1996). Thus, in order to establish actual injury, Harper must demonstrate that the underlying certiorari petition was "nonfrivolous", "arguable", and "more than hope".

At the outset, it is pertinent to note that Harper never described the basis of his certiorari petition in his complaint or any other document submitted to this Court. Additionally, Harper's complaint does not identify which of his numerous certiorari petitions is the predicate for his denial of judicial access claim.[12] Thus, this Court is left to speculate as to the contents and merits of the petition. However, the Court notes that petitions for certiorari request review of lower court decisions. See Sup. Ct. Rules 10-14. Therefore, Harper's initial petition for certiorari

---

[12]The Court reiterates that Harper's deposition testimony first indicates that all of his certiorari petitions challenged Judge DuBois' February 21, 2002 decision and the Third Circuit's affirmance on December 27, 2002. (See Pl.'s Dep. At 92-94, 107:20-108:10.) However, in the same deposition, Harper later indicates that the June 14 and July 26, 2004 petitions appealed the denial of Harper's Rule 60(b) motion. (Id. at 108:11-109:23.)

presumably challenged Judge DuBois' decision not to issue a certificate of appealability, and thus, by virtue of the standard of review for denial of the certificate, his underlying habeas claims. Finally, it is noteworthy that the June 14 and July 26, 2004 petitions appear to be untimely and therefore could not be the basis for Harper's denial of judicial access claim.[13]

As the underlying certiorari petition is necessary to the outcome of the denial of judicial access claim, Harper's failure to set forth evidence of the basis of the certiorari petition is fatal to this action. Christopher v. Harbury, 536 U.S. at 416. However, because Harper is proceeding *pro se*, this Court will assume *arguendo* that Harper would rely on his February 11, 2003, certiorari petition as the predicate claim for this action.[14]

Petitioner did not suffer an actual injury because his February 11, 2003 certiorari petition was frivolous. Harper's habeas claims were addressed in an extensive opinion by Judge DuBois. See Harper v. Vaughn, 2002 WL 257859 (E.D. Pa. 2002). In that opinion, Judge DuBois broadly construed Harper's § 2254 petition as setting forth fourteen claims for relief. See Id. at *1-2. Judge DuBois found that Harper procedurally defaulted on seven of the claims. Id. at *2. Harper conceded procedural default, but argued that the court should nonetheless address these claims on the merits under the "actual innocence" standard articulated in Murray v. Carrier, 477 U.S. 478 (1986)(requiring § 2254 petitioner to show that "no reasonable juror would have found

---

[13]The Third Circuit's decision affirming the district court's denial of habeas relief was issued on December 27, 2002. The Third Circuit's decision affirming the district court's denial of Harper's Rule 60(b) motion issued on February 4, 2004. Both the June 14 and July 26, 2004 certiorari petitions were filed more than 90 days after both of these decisions. See Sup. Ct. Rule 13.1. The petitions were therefore untimely.

[14]Because the June 14 and July 26, 2004 certiorari petitions were untimely, Harper must necessarily rely on the February 11, 2003 certiorari petition for his claim.

10

petitioner guilty beyond a reasonable doubt."). Id. at *3. The district court found that even if Harper's procedurally defaulted claims were taken as true and presented to the jury, the magnitude of the remaining evidence was more than sufficient to support a jury verdict, and that Harper did not come close to meeting the "actual innocence" standard set forth in Murray. See 2002 WL 257859 at *3-5.

With respect to the claims that were not procedurally defaulted, Harper not only failed to present "clear and convincing" evidence that the Pennsylvania State Court's factual determinations were incorrect, but failed to produce any evidence at all. Rather, as Judge DuBois' opinion points out, Harper simply made assertions that directly contradicted the State Court findings. Id. at *8. Similarly, in reviewing Harper's ineffective assistance of counsel claim, the district court found that the state court decision denying Harper's claim "could not be labeled as contrary to, or be seen as involving an unreasonable application of, federal standards." Id. at *9.

Additionally, both Judge DuBois and the Third Circuit panel[15] denied Harper's certificate of appealability, indicating that his claims for habeas relief did not present substantial issues. Id. at *10 ("Because petitioner has not established a constitutional right, the Court will not issue a certificate of appealability."). (Dist. Ct. Docket, No. 02-1826, App. II, Tab 8, Doc. No. 28.) In order for a court to grant a certificate of appealability the "habeas prisoner must make a

---

[15]Local Rule of Appellate Procedure 22.3 provides:

An application for a certificate of appealability will be referred to a panel of three judges. If all the judges on the panel conclude that the certificate should not issue, the certificate will be denied, but if any judge of the panel is of the opinion that the applicant has made the showing required by 28 U.S.C. § 2253, the certificate will issue.

substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[16]  Slack v. McDaniel, 529 U.S. 473, 484 (2000)(internal quotations omitted).  Every jurist that addressed Harper's habeas petition–a magistrate judge, a district court judge, and three circuit court judges–determined that it was utterly lacking in merit and that a certificate of appealability should not issue.[17]  Therefore, the petition for certiorari to the Supreme Court was wholly without merit and Harper suffered no actual injury by missing his filing date.[18]

---

[16]When a district court denies a habeas petition on procedural grounds the standard is slightly different.  The petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

[17]Additionally, Harper filed many other claims that were also found to be meritless.  He filed Rule 60(b) motion with the district court challenging the denial of his habeas petition.  Harper v. Vaughn, 272 F. Supp. 2d 527 (E.D. Pa. 2003).  The motion was denied and the district court refused to issue a certificate of appealability.  Id. at 538.  Harper filed an appeal to the Third Circuit, which the court construed as a request for a certificate of appealability and denied.  (See Dist. Ct. Docket, No. 98-728, App. II, Tab 8; Ct. of App. Docket, No. 03-3331, App. II, Tab 10.)  Harper then filed a second petition for habeas corpus.  Harper v. Diguglieomo, 2006 WL 1308248 (E.D. Pa. 2006).  The district court dismissed eight of the claims as previously raised and transferred six of the claims to the Third Circuit pursuant to 28 U.S.C. § 1631 for a decision as to whether the district court could hear the claims as a second habeas petition.  Id.  The Third Circuit denied the application for a second habeas petition.  Dist. Ct. Docket 05-3444.

[18]Plaintiff makes no showing of the likelihood of the United States Supreme Court granting his petition for certiorari.  The decision to grant certiorari is in the discretion of the Supreme Court and is exceedingly rare.  See John G. Roberts, Jr., Chief Justice of the United States Supreme Court, 2006 Year-End Report on the Federal Judiciary, January 1, 2007, at 9 (the total number of cases filed in the Supreme Court for the 2005 Term was 8,521) available at http://www.supremecourtus.gov/publicinfo/year-end/2006year-endreport.pdf; Office of the Clerk, Guide for Prospective Indigent Petitioners for Writs of Certiorari, October 2007, at 1

Since there is no genuine issue of material fact as to whether Harper suffered an actual injury, his claim for denial of judicial access must fail, and the government is entitled to summary judgment.[19]

B. Federal Entity not a Proper Party in Bivens Action

A Bivens action allows a claimant to bring a suit for money damages against a federal actor. 403 U.S. 388 (1971). However, a Bivens claim is not cognizable against a federal

---

("The Court grants and hears argument in only about 1% of the cases that are filed each Term.") available at http://www.supremecourtus.gov/casehand/guideforifpcases.pdf. Petitions for certiorari "will be granted only for compelling reasons." Sup. Ct. Rule 10. Although not exhaustive, the Supreme Court suggests that certiorari is likely to be granted where:

(a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power;

(b) a state court of last resort has decided an important federal question in a way that conflicts with the decision of another state court of last resort or of a United States court of appeals;

(c) a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.

Sup. Ct. Rule 10. None of the above situations are present in Harper's case and therefore it is highly unlikely that the Supreme Court would have granted his petition for certiorari. See Sup. Ct. Rule 10 ("A petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law.").

[19]While these events fail to establish an actual injury for purposes of an access-to-the-courts claim, they nevertheless do not reflect favorably on the performance of a single employee of the Office of the Clerk. The Court will provide a copy of this Memorandum and Order to the Clerk of Court so that he can ensure that this unfortunate chronology is not repeated.

13

governmental agency or entity. F.D.I.C. v. Meyer, 510 U.S. 471, 484-85 (1994). The Office of the Clerk is federal entity, and thus cannot be sued pursuant to Bivens. See Mooney v. Clerk of Courts, Dist. of New Hampshire, 831 F.Supp. 7, 10 (D. N.H. 1993)("[T]he Defendants identified as the Clerk of Courts for the Districts of New Hampshire and Rhode Island . . . are clearly sued in this Complaint as governmental entities. Bivens liability does not lie against governmental agencies but only against government agents as individuals . . . .").

Harper attempted to name two additional parties–Judge Jan DuBois and The Clerk of the Court–to this lawsuit. However, Harper attempted to include these persons simply by adding their names to the caption, asserting that the Clerk of Court "has been a party to this action at all times", and referring to Judge DuBois as a "party." (Doc. No. 40 ¶ 1-2.) Although Harper titled his document "Motion for Leave to Amend Complaint" (Doc. No. 40), he never actually requested leave to add these parties, but merely asserted, incorrectly, that the complaint always named these parties. (Doc. No. 40 ¶ 2.) Moreover, Harper's motion to amend made no new allegations, but generally restated claims initially asserted in his complaint. (Compare Doc. No. 4 with Doc. No. 43.) Because the document did not set forth a discernible amendment to his complaint, Harper's motion was denied (Doc. No. 43).

The Court is mindful that Harper is a *pro se* litigant and his claims should be construed liberally. However, permitting a *pro se* litigant to add parties at whim, years after the commencement of the litigation, stretches this principal excessively. The Court therefore declines to do so.[20]

---

[20]Moreover, it is important to note that even if these parties were added to the pending litigation, summary judgment would still be appropriate. First, Judge DuBois is entitled to absolute immunity. See Forrester v. White, 484 U.S. 219, 225 (1988). Second, based on the uncontroverted evidence, the Clerk of Court was not personally involved in the conduct giving

Because the Office of the Clerk is a federal entity, a <u>Bivens</u> claim is not cognizable, and Harper's claim for monetary relief is not available.[21]  Thus, summary judgment in favor of the government is appropriate.

## IV.  Conclusion

Accordingly, Defendant's Motion to Dismiss (Doc. No. 53) is GRANTED and Plaintiff's Cross-Motion (Doc. No. 60) is DENIED.  An appropriate order follows.

---

rise to this cause of action.  Personal involvement is necessary to sustain a cause of action under <u>Bivens</u> because the doctrine of *respondeat superior* is inapplicable.  <u>Balter v. United States</u>, 172 Fed. Appx. 401, 403 (3d Cir. 2006); <u>Richards v. Pennsylvania</u>, 196 Fed. Appx. 82, 85 (3d Cir. 2006); <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000).  Since there is no genuine issue of material fact with respect to the Clerk's personal involvement, summary judgment would be appropriate.

[21]Harper also requested a new criminal trial or a reduction in his prison sentence as alternative forms of relief.  The action pending before the Court is not a criminal appeal or a collateral attack on Harper's conviction.  Therefore, we cannot grant him a new trial or reduce his prison sentence.  <u>See</u> e.g., <u>Leamer v. Fauver</u>, 288 F.3d 532, 540-41 (3d Cir. 2002)(distinguishing between remedies available under habeas and those available under § 1983).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY HARPER       **FILED**   CIVIL ACTION

       v.              NOV 2 8 2007

JEFFREY A. BEARD, ET AL.    MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk NO. 2:05-CV-01803-LDD

<u>ORDER</u>

AND NOW, this 28th day of November 2007, it is hereby ORDERED that:

1.  Federal Defendant's Motion to Dismiss, which has been converted into a Motion for Summary Judgment (Doc. No. 58), is GRANTED.  All claims asserted against the Clerk of Court are dismissed with prejudice.

2.  Plaintiff's "Counter Claim for Summary Judgment," which this Court treats as a Cross-Motion for Summary Judgment, (Doc. No. 60), is DENIED.

3.  Judgment is entered in favor of Defendant "District Court Clerks Office of Eastern District Court," and against Plaintiff Anthony Harper.

4.  This is a final judgment.   The Clerk of Court shall close this matter for statistical purposes.

BY THE COURT:

Legrome D. Davis, J.

16